```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                        NORTHERN DIVISION

- - - - - - - - - - - - - - x
                            :
UNITED STATES OF AMERICA     :    Criminal No. 13-02546-BPG
                            :
     v.                     :
                            :
GEORGE SYLVESTER FRINK, JR., :
                            :
          Defendant.         :    October 30, 2013
                            :
- - - - - - - - - - - - - - x    Baltimore, Maryland
```

**DETENTION HEARING**


BEFORE THE HONORABLE BETH P. GESNER, Judge


APPEARANCES:                    RICHARD C. KAY, Esq.
                                Office of the United States
                                Attorney
                                36 S. Charles Street, 4th Floor
                                Baltimore, MD  21201
                                  On Behalf of the United States

                                IVAN J. BATES, Esq.
                                Ivan J. Bates PC
                                201 N. Charles Street, Suite 1900
                                Baltimore, MD  21201-4125
                                  On Behalf of the Defendant

Pretrial Services Officer:      PAIGE WELLER

Audio Operator:                 Jill Klein

Transcription Company:          CompuScribe
                                5100 Forbes Boulevard
                                Suite 101
                                Lanham, MD 20706
                                301/577-5882


Proceeding recorded by electronic sound recording,
transcript produced by transcription service

I N D E X

                                                    Page

Preliminary Matters                                    3

Arguments:

By Richard Kay, Esq.
  Attorney for the Government                          4

  Rebuttal                                            18

By Ivan Bates, Esq.
  Attorney for the Defendant                          12

Findings - Judge Beth P. Gesner                       21

KEYNOTE:  "---" Indicates inaudible in transcript.
          "*" Indicates phonetically spelled.

1                    **P R O C E E D I N G S**

2              THE COURT:  Morning.  You may be seated.

3              MR. KAY:  Good morning, Your Honor.

4              THE COURT:  Mr. Kay.

5              MR. KAY:  Your Honor, this is the case of United

6    States versus George Sylvester Frink, Jr.  It's F-r-i-n-k.

7    The Case Number is 13-2546-BPG.  Now we're here this morning,

8    Your Honor, for the purposes of a Detention Hearing.

9              We had an initial appearance on Monday.  At that

10   time there was some information provided to the Pretrial

11   Services Officer about the Defendant's employment that the

12   Government asked if we could have time to look into.

13             We have looked into that, Your Honor, and

14   apparently the Defendant has also submitted some pay stubs

15   from Gold's Gym, where he says he works, submitted those to

16   the Pretrial Services Officer.

17             But, Your Honor, one of the -- I'm sorry, Richard

18   Kay for the United States.  I forgot to say that for the

19   record.

20             THE COURT:  Good morning.

21             MR. KAY:  I'm sorry, Your Honor.  Maybe Mr. Ivan

22   Bates will introduce himself as well.

23             THE COURT:  Yes, good morning Mr. Bates. Mr. Frink,

24   good morning.

25             MR. BATES:  Good morning, Your Honor.  Ivan Bates

1   on behalf of Mr. Frink to the right of me at the trial table.

2           THE COURT:  Thank you.

3           MR. BATES:  Thank you.

4           MR. KAY:  I'm sorry, Your Honor.

5           THE COURT:  I am all about getting to business.

6           MR. KAY:  Thank you, Your Honor.

7           Again, the point was we wanted to investigate this

8   employment at this place called Gold's Gym.  One of the Case

9   Agents, Agent Hostelly* went to Gold's Gym yesterday and met

10  with the Operations Manager, a Mr. Ty Haynes, H-a-y-n-e-s, at

11  the Gold's Gym.

12          Mr. Haynes said that he's the Operations Manager,

13  he's there every single day.  He runs the place, he knows who

14  all the employees are, he knows who comes and goes, he knows

15  the customers, et cetera.  And, Your Honor, he indicated that

16  there's no "George Frink" who works there.  There is no

17  "George Frink" who is on the payroll.  There is no "Frink"

18  who works there.  There's not even a "George" who works

19  there.

20          So I think that that runs to credibility on that

21  specific point.

22          THE DEFENDANT:  He know me.

23          MR. KAY:  Your Honor, the second thing we wish to

24  bring up is this.  We have a picture of the Defendant's

25  residence.  He reported that to the Pretrial Services Officer

1    as 2 Phoebe Court, that's P-h-o-e-b-e Court, Phoebe Court in

2    Randallstown.  And I -- this is just for the Court, I have a

3    -- just a second.

4              (Pause.)

5              MR. KAY:  -- that he disclosed to the Pretrial

6    Services Officer.  In the Pretrial Services Officer's report

7    there's no second residence that's disclosed.  I asked

8    Ms. Weller whether the Defendant had disclosed that he has,

9    currently has a second residence and he does, Your Honor.  He

10   did not report that to the Pretrial Services Officer and it's

11   not in the Pretrial Services Officer's report.

12             That residence is located at 255 Lou Gaine* Court

13   in, I believe in Pikesville.  Your Honor, I meant to bring a

14   picture of that and I did not bring that with me.  But it's a

15   2-story apartment.  He rented that apartment in July of this

16   year.  I have a copy of the application that he submitted to

17   the --- apartments.  I'll provide that to the Court as

18   Exhibit 3 to this proceeding.

19             Your Honor, in that application for residence you

20   can see that it, his name is at the top:  George Frink, it

21   has his birthday, social security number.  And he's also

22   indicated that his current address is 2 Phoebe Court, that's

23   the address that he disclosed to the Pretrial Services

24   Officer.

25             He indicates the reason for moving, the reason for

 1   moving is on about the middle of the page over towards the

 2   right as "separation".  Apparently separation from his wife.

 3   He indicates on this application, Your Honor, two places of

 4   employment.  One is Pimlico Motors and the other is

 5   Instructional Fitness, manager it looks like.

 6          It is my understanding that Instructional Fitness

 7   could be an official name or a D/B/A for Gold's Gym.  It's my

 8   understanding it is possible that that is the same place as

 9   Gold's Gym where the Operations Manager said that he does not

10   work.

11          THE COURT:  Is it the same address?  It lists an

12   address there.

13          MR. KAY:  I can't read the address, Your Honor.  It

14   looks like Hurt --

15          THE COURT:  --- Lane or something.

16          MR. KAY:  -- Lane.  I think he gave the Gold's Gym

17   address as -- perhaps the Pretrial Services Officer has that.

18          MS. WELLER:  Yes, the address that I had found for

19   Gold's Gym, and it was also on the pay stubs provided to the

20   Pretrial Services Office was also very hard to read but it

21   was South Dolfield Road in Owings Mills.

22          THE COURT:  Okay.

23          MR. KAY:  And Your Honor, just to go back to that

24   point, Mr. Haynes, who works there every day, indicated there

25   is no George Frink on the payroll and he offered to show that

1    to the Agent, that he could look at it if he wanted to.  And

2    there was no George Frink who works there.

3         The only other thing I would point out with regard

4    to the application itself, Your Honor, on Exhibit 3 is

5    towards the bottom it has a 2000 Cadillac Escalade, black.

6    That's the vehicle in which the 15 kilograms of cocaine were

7    found by the agents.

8         Another thing I wish to point out, Your Honor, is

9    in support of this application for leasing 255 Lou Gaine*

10   Court he did submit pay stubs from Ramey Brothers and also a

11   letter from Gold's Gym.  And at the top of that letter it

12   indicates "Instructional Fitness Training Facility".  So

13   that's the information that I have with regard to whether

14   it's the same place or not.  It indicates the address there

15   is South Dolfield Road and it's very possible that he just

16   miss-spelled it or wrote it wrong on the application, cause

17   it's kind of hard to read.

18        But that letter, Your Honor, just to bring this to

19   a close, just to this application, this letter, it's about

20   the fifth page in, is dated July 19, 2013.  And it's entitled

21   "Verification of Employment for George S. Frink, Jr.".  And

22   it says that at that point he was currently an employee of

23   that organization, which as I pointed out earlier was not

24   corroborated by the Operations Manager.

25        The other thing I would point out about this

1    letter, Your Honor, is that it's signed by someone named Tyra

2    Hargis.  That's T-y-r-a, last name H-a-r-g-i-s, as the Human

3    Resource Manager at Gold's Gym.  I had the agents take a look

4    to see who Tyra Hargis is, whether she actually works at

5    Gold's Gym or not.  And they ran her through Maryland Wage

6    Records and learned that she used to work for Ramey Brothers.

7    According to the records, the State records, she was

8    discharged from Ramey Brothers in May of 2012, so a year and

9    a half ago.  And that she filed for unemployment and that

10   it's my understanding that she's currently collecting

11   unemployment and has been ever since May of 2012.

12           So I think that that, the point of that, Your

13   Honor, is that she clearly was not working at Gold's Gym at

14   the time that this letter was written in support of the

15   Defendant's supposed employment there.

16           Your Honor, the Government is moving for detention

17   pursuant to 18 U.S.C. Section 3142(f)(1)(C) which is as the

18   Court is aware affords a presumption that no condition or

19   accommodation of conditions will reasonably assure the safety

20   of the community or the appearance in court by the defendant

21   if the Court finds probable cause to believe the Defendant

22   committed the serious offense that's charged in the

23   Complaint.

24           We submit that the affidavit that is attached to

25   the Complaint here establishes that the Defendant, at the

1    time that he was arrested, his vehicle, the 2008 Cadillac

2    Escalade had 15 kilograms of cocaine inside.  The, I don't

3    recall whether it states this in the affidavit or not, Your

4    Honor, but there were two groups of cocaine in the car.

5    There was a bucket in the back seat that had about seven

6    kilograms in the back seat.  And then the other seven

7    kilograms were contained or concealed in a secret compartment

8    that was professionally installed with hydraulic lifters in

9    the console.  The agents had to pry the thing open in order

10   to get the kilograms.  But they weren't in there by accident,

11   they were clearly in there in a secret compartment.

12            And I think this, it's not the type of vehicle that

13   someone would sell.  You don't put a secret compartment in a

14   car that you're going to sell.  And his job supposedly is

15   buying and selling cars for Ramey Brothers and Pimlico

16   Motors.

17            So I think that the point of that, Your Honor, is

18   that the affidavit does establish probably cause to believe

19   that the serious offense that's charged in the Complaint was

20   committed by this Defendant, which would afford us the

21   presumption in this case.

22            I can go on, Your Honor, if you like?

23            THE COURT:  No, unless you have something else to

24   address?

25            MR. KAY:  I was just going to summarize more of the

1   points, Your Honor, under 3142(g), Your Honor, the points

2   that the Court is to look at in such a hearing.  And one is

3   the nature and circumstances of the offense which here is a

4   very serious offense.  This is not a street level drug case,

5   this is a 15 kilogram, very high level supplier of drugs to

6   Baltimore and the Baltimore area.  So it's a very, very

7   serious offense.

8           Also, the history with regard to the weight of the

9   evidence, the strength of the evidence, here I think it could

10  not be stronger, Your Honor, because the drugs were found in

11  the Defendant's car and as I said, half of them were

12  concealed in a secret compartment.

13          As to the history and the characteristics of the

14  Defendant, he does have a prior conviction for a handgun

15  offense.  And I noted in the initial appearance that it's an

16  old, old conviction, it's 16 years old.  But I did want to

17  bring that to the Court's attention because it does run to

18  possible danger to the community.  And the Court can

19  certainly consider that.

20          It is also important as to the history and

21  characteristics of the person, Your Honor, that he apparently

22  lied to the Pretrial Services Officer not only about his

23  employment but about his residence.  He didn't disclose the

24  second residence to the Pretrial Services Officer and he

25  apparently lied about his employment.

1            He submitted documents that are apparently false

2    about his employment at Gold's Gym to the Pretrial Services

3    Officer, and I think that goes to his credibility and trust.

4            And Your Honor, the heart of this proceeding,

5    indeed at the heart of the heart of this type of proceeding

6    is one about trust.  It's about credibility.  It's about

7    whether you can rely on the Defendant to be where he's

8    supposed to be when he's supposed to be there.  And he will

9    not do anything, commit another crime, or cause any kind of

10   danger to the community.

11           And I think, Your Honor, that all of these things,

12   these factors run to that single heart of this hearing.  I

13   don't think that there's an element of trust that supports a

14   release of this Defendant.

15           Your Honor, I think that the other factor that I

16   just wanted to point out is that this charge, as we pointed

17   out, has a mandatory minimum sentence of 10 years, a maximum

18   of life imprisonment.  Given the strength of the evidence

19   here I think it is also worthwhile to consider that it's hard

20   to imagine with that kind of evidence someone sticking around

21   either to supposedly perform administrative duties at a fake

22   job at Gold's Gym or to stick around for a trial.

23           The Government submits that the Defendant should be

24   detained.

25           THE COURT:  All right.  Thank you, Mr. Kay.

1           Ms. Weller, do you have pay stubs that were

2    submitted to you?

3           MS. WELLER:  I do have the copies, I believe

4    Mr. Bates has copies that are more legible than I do.

5           THE COURT:  Okay.

6           MR. BATES:  May I approach, Your Honor?

7           THE COURT:  Sure.

8           (Pause.)

9           THE COURT:  Thank you.

10          (Pause.)

11          THE COURT:  Mr. Bates, I am happy to hear from you.

12          MR. BATES:  Yes, thank you, Your Honor.

13          Your Honor, I think one of the things that's very

14   interesting to me is that the Government began to focus on

15   the Gold's Gym issue.  They don't say anything about

16   confirming the employment of Ramey Brothers where he's been

17   for a mighty long time.

18          They don't say anything about his substantial ties

19   to the community:  his wife, his children, his mother who is

20   here in the courtroom with him, Your Honor.

21          One of the things that's very interesting, in

22   reference to Gold's Gym, they talked to an individual, he

23   says he does not know my client.  But we have pay stubs.

24   It's not just one pay stub, it's multiple pay stubs.  We

25   would ask where is this individual?  Did they ask to look at

1    the payroll history of Gold's Gym?  Or anything like that.

2           We have the pay stubs.  My client does the payroll

3    for Gold's Gym.  He is more or less a contractual individual

4    who does the payroll.  Comes in late at night, does what he

5    needs to do and doesn't necessarily have the interaction with

6    everybody there, has more of a relationship with the owner of

7    the Gold's Gym, Your Honor.  And that's something that's very

8    important --

9           THE COURT:  Who's the owner?

10          MR. BATES:  Mr. Gerald Jones, Your Honor.

11          THE COURT:  Okay.

12          MR. BATES:  That's the individual that he would

13   have more of a contact and a relationship with, Your Honor.

14          And based on that, Your Honor, he is an individual

15   that is working.  One of the things that's also very

16   important to sit down and look at is this apartment 225

17   (sic.), this apartment that the Government talks about.

18          One of the things is that my client and his wife

19   are going through some marital issues.  My client had got an

20   apartment because he was going to separate, he was going to

21   leave his wife.  However, they sat down, they talked, and

22   they've actually worked things out, Your Honor.  They are

23   actually back together.

24          The problem is he still entered into that lease but

25   he doesn't live there, Your Honor.  He does not stay there,

1   he does not live there.  He still would stay with his wife

2   and his family at 8 (sic.) Phoebe Court.

3               THE COURT:  Is he still paying rent there?

4               THE DEFENDANT:  Yes.

5               MR. BATES:  Yes, he still does pay rent because he

6   still has the lease, Your Honor.  And so he still has entered

7   into that contract, Your Honor.  But he does not stay there.

8   Even when you sit down and you look at the first page of the

9   application he put "separation".  So that sits down, and this

10  is the rental application, Your Honor.

11              That sits down and tells that he admitted he was

12  separated.  There were issues.  One of the problems that you

13  do have, the separation, sometimes couples go their own

14  separate ways and they're finished.  And then sometimes

15  couples can work things out and get back together, Your

16  Honor.

17              That does not mean there are no observations of him

18  coming and going at that particular apartment, Your Honor.

19  But what it does mean is that him and his wife have worked it

20  out.  They've sat down, he's given the truthful information

21  about 2 Phoebe Court in Randallstown where he was moving

22  from, Your Honor.

23              And so that once again corroborates and shows that

24  this is a man who can be trusted, Your Honor.

25              Now, in reference to the Cadillac Escalade, I do

1   not believe the Cadillac Escalade was registered to anybody.

2   My understanding is that there were dealer tags associated

3   with Mr. Frink's business in terms of a vehicle that would be

4   sold, Your Honor.  However, I don't believe that was

5   registered.  Mr. Frink also had a business where he sold

6   vehicles as well, Your Honor.  And that's important to know

7   as well.

8          But the other things that when you sit down and

9   look at the case, I have not heard the Government say that he

10  was a leader in any way, shape, form, or fashion, Your Honor.

11  I have not heard the Government say that there were hundreds

12  of thousands of dollars that they recovered in this

13  particular case, Your Honor.

14         I have not heard the Government say that there were

15  any weapons recovered whatsoever, Your Honor.  I have not

16  heard the Government say that they saw a sale, that they

17  recovered a sale, that they knew anything about a potential

18  sale.  Anything whatsoever.  They seen an individual going in

19  and out a vehicle and they sit down and they find, I thought

20  it was 14 bricks of now which they said it's 15 kilos.

21         So in terms of the math I thought each particular

22  brick was a particular kilo, so to me it would be 14 kilos

23  and not 15.  And I only say that based on terms of the

24  minimum mandatory issues, Your Honor.

25         The also thing that's important to look at in terms

1   of a minimum mandatory, Your Honor, I believe my client would

2   qualify for the safety valve.  If he qualifies for the safety

3   valve he's not facing a 10-year minimum mandatory, Your

4   Honor.  He's facing a sentence that would be underneath of

5   the minimum mandatory at that moment in time, Your Honor.

6           This is a man that does work.  This is a man that's

7   provided the pay stubs.  This is a man that has a family that

8   he cares for.  His wife is here, she's willing to act as a

9   third-party custodian.  His mother's here.  He has the

10  support of his family, he has the support of his children.

11  He is not going to flee the jurisdiction, Your Honor.  He's

12  even sat down and retained counsel in that regard, Your

13  Honor.

14          We would ask the Court to file the Pretrial

15  recommendation that he be released on his own recognizance.

16  And if the Court is not comfortable with him being released

17  on his own recognizance, we would ask that he be released on

18  electronic monitoring, Your Honor.  That way if any other

19  investigation needed to be done could definitely be done,

20  Your Honor.

21          When you sit down and you look at the entire

22  Government's case, they have an individual that's going,

23  allegedly going in and out of a vehicle and they find drugs

24  within this vehicle.  We say the vehicle is not my client's

25  vehicle.  It's one of the vehicles that were on the -- it was

1    there to be sold, Your Honor.

2         We do recognize the issues and we do recognize that

3    the Court must believe the facts as true.  We have a number

4    of other arguments and issues that Mr. Ravenell will put

5    forth, Your Honor.  However, in terms of when you look at the

6    entire picture, the simple fact that he does have the

7    opportunity it looks like to have the safety valve.  The

8    simple fact that he has not had any criminal activity

9    connection since 1998, Your Honor, 16 years, speaks volumes

10   of this young man.

11        The simple fact that when you also sit down and

12   look at his application he puts his 2 Phoebe Court, he puts

13   separation, he put Pimlico Motors, and he also put Gold's

14   Gym.  So this is something that he did not just come up with.

15   This is something that he's been talking about since July

16   until this time period.  And the simple fact we've also

17   provided pay stubs.

18        If anything, Your Honor, we feel that the

19   Government spoke to this one individual.  We provided pay

20   stubs.  We feel if anything that's a wash and we can sit down

21   and look at the employment history of Ramey Brothers, Your

22   Honor.

23        My client is not a flight risk.  My client is not a

24   threat to the community whatsoever, Your Honor.  And based on

25   that and the simple fact that they do not say any leadership

1    role, we feel that we've, I've rebutted the Government's

2    presumption and we would ask that he be released.

3              Thank you.

4              THE COURT:  Thank you.

5              Do you have anything else, Mr. Kay?

6              MR. KAY:  Just two very brief things.  One, as to

7    the rent for the 255 Lou Gaine* Court, it indicates on the

8    application that it's $1,678 a month.  That's close to $1700

9    a month, Your Honor.  That's not disclosed -- again, on the

10   Pretrial Services report he's required to provide information

11   that's critical to this Court.  There's no indication of that

12   $1,700 a month liability on this Pretrial Services report at

13   all.

14             And the other thing, Your Honor, is that apparently

15   Mr. Bates just indicated that he has also another side

16   business of buying and selling cars on his own that is

17   separate from Ramey Brothers, unless I misunderstood

18   Mr. Bates.  And that also was not disclosed to the Pretrial

19   Services Officer.  It is certainly not contained in this

20   report.

21             Thank you, Your Honor.

22             THE COURT:  Thank you, Mr. Kay.  Ms. Weller, thank

23   you for your report.  Did you have anything to add?

24             MS. WELLER:  Yes, Your Honor.  The report that was

25   initially submitted, due to the additional information and

1    the discrepancies in residence and employment, Pretrial

2    Services would maintain the recommendation that the Defendant

3    be released on conditions that are set out in the report.

4    But at this time we would request that if Your Honor is

5    inclined to release him that he be on 24-hour lock down on

6    location monitoring until we can sort out those

7    discrepancies.

8              THE COURT:  Okay.  Thank you.

9         All right.  Previously, maybe I didn't say, I did

10   read the Pretrial report.  Of course I had read the Criminal

11   Complaint and so I'm familiar with that.  And I appreciate

12   the argument of counsel.

13        The Government of course is entitled to seek

14   detention given the nature of the charge, here that is

15   possession with intent to distribute cocaine, pursuant to

16   Title 21, Section 841.  The maximum penalty is noted as life

17   imprisonment with a minimum mandatory of 10 years.

18        The Government also enjoys the presumption in favor

19   of detention if I find probable cause, which I clearly do.

20   The weight and nature of the evidence here is extremely

21   substantial and more than adequately addresses a probable

22   cause standard.

23        Pursuant to the presumption, detention is

24   appropriate unless I can find facts and circumstances which

25   rebut presumption.  When I read the Pretrial report and

1   Pretrial's recommendation I was of the mind that perhaps

2   conditions of release could be fashioned.

3           As Mr. Bates points out, Mr. Frink enjoys long-

4   standing ties to the community, support of his family who are

5   here today, and in the scheme of things a not significant

6   prior criminal record.  Which as Mr. Kay pointed out was a

7   fairly old handgun violation.

8           So on those facts conditions of release could

9   perhaps be fashioned.  But on the current record before me,

10  however, I think there is clear evidence of deception with

11  Pretrial Services.  I understand that Mr. Bates maintains

12  that these pay stubs generate a factual issue.

13          Let me just say that based on the evidence that I

14  have before me I think that Pretrial was not provided with

15  full information, most notably with respect to the second

16  residence.  Whether he lives there or not that is a

17  substantial portion of money that apparently has been being

18  paid since July which impacts a whole number of different

19  evaluations in the Pretrial report.

20          And I think, as noted, candor to the Court, candor

21  to Pretrial Services, and trust really is at the core of

22  determining whether or not release conditions can be set.

23  And when you start with the presumption and add to that

24  presumption clear evidence of deception, that presumption

25  cannot be rebutted on those facts.

1          In terms of the nature of the offense and

2  circumstance of the offense, of course in any case, narcotics

3  case, the Government enjoys the presumption.  Here let me say

4  that those nature and circumstances I think also bolster the

5  presumption.  There is clear evidence of a high level, high

6  volume cocaine transactions and business ongoing.

7  Sophisticated nature of the crime given the secret

8  compartment involved.

9          Let me note that on the application for residency,

10  Mr. Frink listed -- I don't have the license plate, but he

11  listed a 2008 Cadillac Escalade, black.  So a notion that

12  that is some random vehicle is less compelling in light of

13  that independent admission with respect to the connection

14  with the vehicle.

15          And, as I said, but given those facts and

16  circumstances, of course the significant penalties offer

17  incentive to flee, particularly to one who has not been

18  significantly involved in the criminal justice system in the

19  past.

20          So based on all of those facts and circumstances, I

21  do not find that the presumption has been rebutted, either

22  with respect to danger or flight.

23          And I do find by clear and convincing evidence that

24  there is no condition or combination of conditions that will

25  basically insure either Defendant's presence or the

1    community's safety.

2              And so for those reasons, based on the current

3    state of the record, I am entering an order of detention.

4              I think we need to set a preliminary hearing date.

5              THE CLERK:  November 11th.

6              THE COURT:  November 11th at 12:00 o'clock for a

7    preliminary hearing?

8              MR. KAY:  Your Honor, I have that as a holiday for

9    the Government.

10             THE COURT:  Is that Monday?  Is that a Monday?

11             THE CLERK:  Yes.

12             THE COURT:  So we'll go to Tuesday --

13             MR. KAY:   Okay.  Fine, Your Honor.

14             THE COURT:   -- November 12th at 12:00 o'clock.  And

15   if we don't need to proceed on that day let us know, Mr. Kay.

16             MR. KAY:  We will, Your Honor.  Thank you.

17             MR. BATES:  Your Honor, if we are able to actually

18   have the gentleman from Gold's Gym come in here and say in

19   fact that my client does work there, would the Court

20   entertain the opportunity to have a hearing?

21             THE COURT:  If you have new evidence I will

22   certainly always hear what you have.

23             MR. BATES:  Yes.

24             THE COURT:  I think I've indicated a number of

25   different factors, that's one of them.  And certainly if you

1    acquire any new evidence I would be happy to have you present

2    it.

3              MR. BATES:  Thank you, Your Honor.

4              THE COURT:  Anything else?

5              MR. KAY:  Nothing from the Government.  Thank you,

6    Your Honor.

7              THE COURT:  Thank you.

8              THE CLERK:  All rise.  This Honorable Court now

9    stands in recess.

10             (Whereupon, the hearing was concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct

transcript from the duplicated electronic sound recording of

the proceedings in the above-entitled matter.


/s/ Jacqueline M. McFarland            November 7, 2013
Jacqueline M. McFarland                     Date
Certified Transcriber
Certificate No.:  CET**227